UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
                        :

KELLY MCTIERNAN,               :

                    :

           Petitioner       :

                    :

                    :       21 Civ. 1543 (JPC) (JLC)

      -v-              :

                    :      OPINION AND ORDER

JEFFREY TEDFORD, Superintendent, Adirondack  :   ADOPTING REPORT AND

Correctional Facility,           :    RECOMMENDATION

                    :

          Respondent.     :

                    :

-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       Petitioner Kelly McTiernan seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d).

On August 5, 2016, following a nine-day trial in the New York Supreme Court, New York County,

a jury convicted McTiernan of manslaughter in the first degree. McTiernan was sentenced to a

determinate term of twenty years' imprisonment, followed by five years of supervised release. At

trial, McTiernan sought to rely on multiple theories of justification for the use of deadly physical

force. In petitioning this Court for relief under Section 2254, McTiernan argues that three errors

related to the trial court's jury instruction on justification violated McTiernan's federal

constitutional right to a fair trial, and that McTiernan's trial counsel provided constitutionally

defective assistance by failing to challenge one of these three errors. In a Report and

Recommendation issued on May 12, 2023, the Honorable James L. Cott recommended denying

McTiernan's petition. For the reasons provided below, the Court overrules McTiernan's

objections to the Report and Recommendation, adopts the Report and Recommendation in its

entirety, and denies McTiernan's petition.

# I.  Background

**A.    Facts[1]**

In the early morning hours of October 12, 2007, Fain Upshur was found dead in the West Village neighborhood of Manhattan. *McTiernan I*, 990 N.Y.S.2d at 202. Upshur had been stabbed in the chest by McTiernan, who believed that Upshur was conspiring with Abdul Flynn to steal McTiernan's cell phone. *See* Tr. at 1131:14-16, 1133:9-13. McTiernan was arrested four days later, *id*. at 779:7-9, 618:22-619:14, and on November 5, 2007, a grand jury in New York County returned an indictment charging McTiernan with murder in the second degree, in violation of New York Penal Law Section 125.25(1), and criminal possession of a weapon in the third degree, in violation of New York Penal Law Section 265.02(1), Dkt. 10 (Respondent's opposition brief) at 2; Petition at 1 n.2.

**1.    The 2010 Trial**

On January 26, 2010, following a jury trial in the New York Supreme Court, New York County, McTiernan was convicted of murder in the second degree and sentenced to a term of twenty years to life in prison. *McTiernan I*, 990 N.Y.S.2d at 202. At that trial, the jury heard "two sharply different accounts of the incident"—with Flynn, the state's main witness, testifying that McTiernan stabbed Upshur mere seconds after Upshur whispered something to McTiernan, and McTiernan testifying that after demanding the cell phone's return, Upshur "spun around and

---

[1] The following facts are drawn from the transcript of McTiernan's 2016 trial in the New York Supreme Court, New York County, Dkt. 8 ("Tr."), McTiernan's Section 2254 Petition, Dkt. 1 ("Petition"), and from the decisions issued by the New York Supreme Court's Appellate Division, First Department, following McTiernan's appeals from the January 26, 2010 second-degree murder conviction and from the August 5, 2016 first-degree manslaughter conviction, *People v. McTiernan* (*"McTiernan I"*), 990 N.Y.S.2d 200 (1st Dep't 2014) (reversing conviction and remanding for a new trial); *People v. McTiernan* (*"McTiernan II"*), 111 N.Y.S.3d 22 (1st Dep't 2019) (affirming conviction).

lunged" at McTiernan in a "very sudden motion," prompting McTiernan to block the attack and "poke[]" Upshur once in his chest with the knife McTiernan had been carrying that evening.  *Id.* at 202-03.  "Based on [McTiernan]'s testimony, the trial court instructed the jury on the defense of justification under two separate theories: the use of deadly physical force to defend against the use or imminent use of deadly physical force and the use of deadly physical force to defend against robbery."  *Id.* at 203 (citations omitted).  A "critical difference between the two grounds for justification" is "that deadly physical force may be permissible to defend against a robbery even if the alleged robber is using only physical force, and not deadly physical force."  *Id.* at 204.  Yet, in charging the jury on the defenses, the trial court asserted that the "only difference" between the two theories was that "in repelling the robbery, the person has no duty to retreat," and then, amplifying the error, repeated this statement in responding to a jury note requesting further instruction on justification.  *Id.*

McTiernan appealed the conviction to the New York Supreme Court's Appellate Division, First Department, based on this error.  *Id.* at 203.  The Appellate Division sustained the appeal, finding that the trial court's failure to clearly explain the availability of the justification defense where the alleged robber used only physical force, and not *deadly* physical force, was "prejudicially defective."  *Id.*  Although McTiernan's counsel had not objected to the erroneous charge, the Appellate Division nevertheless found that reversal was warranted "in the interest of justice."  *Id.*  Accordingly, McTiernan's conviction was reversed by the Appellate Division on July 17, 2014, and the case was remanded for a new trial.  *Id.* at 206.

###### 2.    The 2016 Trial

McTiernan's second trial began on July 26, 2016.  Tr. at 1.  As Flynn and McTiernan provided the most significant testimony, their accounts are summarized below.  *See id.* at 286:10-384:23 (Flynn direct examination), 1090:2-1139:3 (McTiernan direct examination).[2]

###### i.    Flynn's Testimony

Flynn testified that, upon meeting in the evening of October 11, 2007, he and McTiernan spent some amount of time panhandling together before they settled on a West Village stoop with the beer they had purchased.  *Id.* at 308:15-314:14.  According to Flynn, while seated together, McTiernan claimed to be a "pimp," professing to have "two girls down in Washington Square Park" and showing Flynn "the girl's picture" on McTiernan's phone.  *Id.* at 314:15-315:11.  This prompted Flynn to ask McTiernan to use the phone to make a call to the jail from which he had recently been released.  *Id.* at 315:16-25.  As Flynn had just spent "five and a half years" in jail and did not know how to use the phone, McTiernan set up the call.  *Id.* at 316:1-7.  While Flynn was on hold with the jail, he noticed McTiernan "flipping" a knife, which McTiernan eventually put away.  *Id.* at 319:4-19.

As Flynn further testified, Upshur, who was seated on the neighboring stoop, approached Flynn and McTiernan, asking for a lighter and if they would "like a hit [of crack]."  *Id.* at 325:13-

---

[2] McTiernan raises numerous objections to the Report and Recommendation's portrayal of the trial testimony. *See*, *e.g.*, Dkt. 25 ("Objections") at 2 (criticizing the Report and Recommendation for failing to describe the testimony of Jason White, described as "a disinterested witness subpoenaed by the defense, [who] also offered key testimony that corroborated McTiernan's testimony"); 3 (criticizing the Report and Recommendation for failing to include McTiernan's physical description of Flynn as a "bigger stockier guy"), 4 (criticizing the Report and Recommendation for failing to include information on Flynn's criminal history).  But there, as here, summaries of the witnesses' testimony merely provide additional context for the discrete legal issues raised in the Petition, and any decisions on what information to include or exclude serve only that narrow purpose.  The summary that follows does not reflect the scope of the record considered by the Court in reviewing the Petition.

327:3.  Flynn testified that he declined, whereas McTiernan took a hit, and Upshur returned to the neighboring stoop thereafter.  *Id.* at 326:3-9.  McTiernan quickly "guzzle[d]" a beer and then suggested to Flynn that they head to Washington Square Park and "pick up some money and get some more drinks for [McTiernan's] girls."  *Id.* at 327:25-328:7.  McTiernan started walking quickly, and, as Flynn stood up to follow, Upshur also stood up, asking Flynn if he could "tag along."  *Id.* at 328:10-21.

With McTiernan so far ahead, Flynn decided to keep McTiernan's cell phone.  *Id.* at 329:20-25.  Flynn then instructed Upshur to "walk [McTiernan] to the corner and then come around the corner" to meet Flynn at a specified location.  *Id.* at 330:9-13.  At some point, Upshur and McTiernan turned around and began walking towards Flynn, who "put the phone back to [his] ear like [he was] talking to somebody on the phone."  *Id.* at 330:22-25.  Flynn testified that McTiernan demanded that Flynn return the phone, and that Flynn responded, "[H]old on. Everything is good.  They still got me on hold.  Relax."  *Id.* at 331:5-7.  Then, according to Flynn, Upshur approached McTiernan's side, "sa[id] something to [McTiernan] in the ear," and, after they took "maybe five" steps, McTiernan suddenly "just plunged at [Upshur]."  *Id.* at 331:10-18. Flynn further testified that McTiernan then faced him and said, "I killed your man.  You're next." *Id.* at 331:10-21.  Once Upshur "dropped," Flynn "could see the knife in [McTiernan's] hand."  *Id.* at 331:22-23.

### ii.    McTiernan's Testimony

McTiernan provided a drastically different account.  McTiernan denied drinking, panhandling, or smoking crack with Flynn.  *Id.* at 1127:1-6.  McTiernan also denied being a pimp or ever representing as much to Flynn.  *Id.* at 1104:20, 1128:15-16.

On McTiernan's telling, on the evening of October 11, 2007, McTiernan had a drink with a man at a bar, and after leaving the bar, McTiernan came across Flynn, who was sitting on a stoop. *Id.* at 1124:14-21.  As McTiernan walked past him, Flynn asked to use McTiernan's cell phone to make a call, and McTiernan agreed, apparently against McTiernan's better judgment.  *Id.* at 1124:20-1125:3 (McTiernan testifying: "At first, an alarm bell went off in my head but I'm kind of naïve drunk . . . .  Alarm bell didn't ring loud enough . . . .  Then I handed a homeless man a brand new cell phone.").  Flynn "made a phone call or appeared to make a phone call" and afterwards "folded [the cell phone] and put it in his pocket." *Id.* at 1125:24-1126:1.  McTiernan asked Flynn to return the phone, but Flynn insisted that he was "waiting for a call back." *Id.* at 1126:1-2.

At some point, Upshur "came over and sat down and he took a hit—he needed a lighter and he asked [Flynn] whose phone is that." *Id.* at 1128:21-25.  McTiernan testified that Flynn and Upshur then walked away, at which point "I knew . . . that I wasn't going to get my phone back." *Id.* at 1129:1-5.  McTiernan followed the pair, repeating "give me my phone" to "draw attention" and prompt "someone [to] call the police." *Id.* at 1129:10-13.  McTiernan testified that although McTiernan said this with a raised voice, McTiernan did not scream out these demands because McTiernan was "trying to balance not spooking [Upshur and Flynn] and drawing enough attention to get someone to call 911." *Id.* at 1131:6-8.  McTiernan further testified that as McTiernan was "catching up" to Flynn and Upshur, Flynn told McTiernan, "you're not getting your fucking phone back." *Id.* at 1131:25-1132:8.  When McTiernan "t[ook] a couple of more steps towards" them, Upshur threatened that McTiernan "better get the fuck away from [them]" and lunged at McTiernan "with his right hand toward [McTiernan's] stomach." *Id.* at 1132:19-23.  McTiernan

testified, "I bladed my body and blocked [the attack] with my right hand and slipped the knife off my belt and snapped it off and I poked [Upshur]." *Id.* at 1132:23-25.

McTiernan further testified, "I saw some glint" (presumably on Upshur's person), although McTiernan could not be sure that Upshur had a knife. *Id.* at 1132:25-1133:4; *see also id.* at 1133:4-5 (McTiernan testifying: "The guy attacks me on a robbery. It's reasonable to assume he was armed."). McTiernan testified that it was "absolutely clear" that McTiernan was "being robbed at that point in time," and that McTiernan "absolutely" felt the need to stab Upshur in self-defense. *Id.* at 1133:11-16; *see also id.* at 1133:6-8 (McTiernan testifying: "Besides you heard how badly it turns out from two or more. At the very least I was going to end up on the ground getting my head kicked in. So I terminated that."). McTiernan elaborated: "As I told you, I was either going to get stabbed myself or I was going to get my head kicked in until I'm unconscious. Who knows how far it would go." *Id.* at 1133:16-18.

### iii.    Jury Verdict and Conviction

On August 5, 2016, the jury found McTiernan not guilty of murder in the second degree, guilty of manslaughter in the first degree, and not guilty of criminal possession of a weapon in the third degree. *Id.* at 1460:19-1461:23. On October 28, 2016, McTiernan was sentenced to a term of twenty years' imprisonment. *McTiernan II*, 111 N.Y.S.3d at 23.

### iv.    Post-Conviction Proceedings

McTiernan appealed the 2016 conviction as well, arguing, among other things, that McTiernan's "right to present a defense on justification" was violated where the trial court (1) misstated that McTiernan had to be faced with deadly physical force to repel the alleged robbery, (2) provided a "misleading" definition of robbery, and (3) failed to instruct the jury on justification in the use of deadly physical force to effect an arrest. *See* Dkt. 9-1 (McTiernan's brief on appeal)

7

at 38-57.[3]  In connection with the arguments on the first alleged error, McTiernan alternatively

contended that trial counsel was ineffective for failing to objection to the trial court's misstatement.

*Id.* at 46-48; *accord id.* at 47 ("Alternatively, given that the error was so significant and important

to the defense, the failure to preserve the issue is an obvious deviation from professional standards,

and one that violated McTiernan's *federal* and state rights to effective assistance of counsel."

(emphasis added)).[4]  McTiernan further argued that the cumulative effect of these errors (and other

alleged errors not relevant here) violated McTiernan's right to a fair trial.  *Id.* at 57-58.

On October 10, 2019, the Appellate Division's First Department affirmed McTiernan's

conviction.  *McTiernan II*, 111 N.Y.S.3d at 23.  McTiernan's application for leave to appeal to the

Court of Appeals of New York was denied on February 21, 2020, without a written opinion.

*People v. McTiernan*, 142 N.E.3d 1156 (N.Y. 2020).

## B.    Procedural History

On February 20, 2021, McTiernan timely filed a counseled petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  Dkt. 1.  McTiernan raises the same three alleged errors

related to the trial court's charge on justification, argues that these errors were left uncorrected on

appeal, and contends that they individually and cumulatively constituted a violation of

McTiernan's right to a fair trial and due process under the Due Process Clause of the Fourteenth

Amendment to the United States Constitution, insofar as the prosecution was alleviated of its

burden of disproving McTiernan's defense of justification in using deadly force—whether that

justification arose from self-defense, resisting robbery, or attempting to effect an arrest of a robber.

---

[3] When referencing page numbers in McTiernan's appellate brief, the Court uses the pagination generated by the Electronic Case Filing system.

[4] McTiernan was represented by the same counsel in the appeal of the 2010 conviction, during the 2016 trial, in the appeal of the 2016 conviction, and in the instant Section 2254 petition. *See* Objections at 16.

Petition at 9-31; *see Davis v. Strack*, 270 F.3d 111, 124 (2d Cir. 2001) ("Under New York law justification is a defense, not an affirmative defense; therefore, when the defense is raised on a proper evidentiary record, the People bear the burden of disproving it beyond a reasonable doubt.").

The first alleged error involves the trial court's failure to clarify the term "immediately" in charging the jury on the definition of robbery, which failure purportedly deterred the jury from "understand[ing] that McTiernan was a victim of a robbery" in the first instance. Petition at 10; *see also id.* at 13-17. The second alleged error concerns the trial court's failure to instruct the jury on the defense of justification when a private citizen, in attempting to effect an arrest of a person committing robbery, uses deadly physical force. *Id.* at 17-19. And the third alleged error involves the trial court's misstatement of the law at one point in charging the jury on the justification defense for a defendant's use of deadly physical force in resisting robbery, which defense requires only that the alleged robber was using physical force, *not deadly* physical force. *Id.* at 19-22. Lastly, McTiernan charges trial counsel with ineffective assistance for his failure to object at trial to that third alleged error. *Id.* at 29.

On March 3, 2021, the matter was referred to the Honorable James L. Cott for a report and recommendation. Dkt. 4. And on May 13, 2021, Respondent filed an opposition to the petition, Dkt. 10, to which McTiernan replied on June 23, 2021, Dkt. 14.

On May 12, 2023, Judge Cott issued the Report and Recommendation, recommending that the Court deny McTiernan's petition. Dkt. 17 ("R&R"). For each of McTiernan's jury instruction challenges, Judge Cott determined that, while each claim had been presented to the Appellate Division and was thus exhausted, federal review was nevertheless precluded because the state appellate court had denied each challenge on independent and adequate state grounds. *See id.* at

25-28 (finding that the state appellate court relied on its interpretation of substantive New York law in rejecting McTiernan's challenge to the trial court's instruction regarding the immediacy of the use of force during a robbery), 30-34 (finding that the state appellate court relied on state procedural law in determining that McTiernan's challenge to the trial court's omission of an instruction on justification when effecting an arrest was unpreserved), 38-40 (finding that the state appellate court determined that McTiernan's challenge to the trial court's misstatement on the justification defense was unpreserved). Judge Cott found, in the alternative, that each challenge failed on the merits, *id.* at 28-29, 35-36, 41-43, and further that because "there is no meritorious claim upon which habeas relief should be granted, there can be no cumulation of errors," *id.* at 47-48. Lastly, Judge Cott rejected McTiernan's ineffective assistance of counsel argument for failing to satisfy the prejudice prong under *Strickland v. Washington*, 466 U.S. 668 (1984). R&R at 43-47; *see id.* at 40 ("Even assuming that there was no strategic reason for counsel's failure to object at trial, it is unlikely that . . . the jury would have reached a different outcome." (citation omitted)).

On June 30, 2023, McTiernan filed objections to the Report and Recommendation, Dkt. 25, and Respondent filed a one-page response two weeks later, Dkt. 26.

On May 30, 2024, while this matter was still pending, McTiernan was released on parole. *See* New York State Department of Corrections and Community Supervision Incarcerated Lookup, https://nysdoccslookup.doccs.ny.gov (last visited August 12, 2024).

## II. Legal Standards

### A.    Standard of Review of a Report and Recommendation

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" in a Report and Recommendation, and must conduct *de novo* review of any part of the magistrate judge's disposition to which a party submits

a proper objection. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).  "To be proper, an objection must be clearly aimed at particular findings, and may not be conclusory or general."  *Riaz v. Comm'r of Soc. Sec.*, No. 20 Civ. 8418 (JPC) (SLC), 2022 WL 4482297, at *2 (S.D.N.Y. Sept. 27, 2022) (internal quotation marks and citations omitted).  "Parties may neither regurgitate the original briefs to the magistrate judge nor raise new arguments not raised to the magistrate judge in the first instance."  *Id.* (internal quotation marks omitted); *accord United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019).  On the other hand, a district court reviews for clear error those parts of a Report and Recommendation to which no party has filed proper or timely objections. 28 U.S.C. § 636(b)(1)(A); *see Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008) ("To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." (internal quotation marks omitted)).

### B.  Standard for Habeas Corpus Relief Under Section 2254

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), a state prisoner may seek federal collateral review of a state court conviction "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

### 1.  Exhaustion

But "[b]efore a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254."  *Degree v. Corey*, No. 21 Civ. 11012 (CS) (JCM), 2024 WL 947028, at *3 (S.D.N.Y. Jan. 19, 2024), (internal quotation marks omitted), *report and recommendation adopted*, 2024 WL 19219173 (S.D.N.Y. May 2, 2024).  As relevant here, unless "(i) there is an absence of available State corrective process; or (ii)

circumstances exist that render such process ineffective to protect the rights of the [petitioner],"
28 U.S.C. § 2254(b)(1)(B), the petitioner must have first "exhausted the remedies available in the
courts of the State," *id.* § 2254(b)(1)(A).  In other words, the petitioner must have "fairly presented
to an appropriate state court the same federal constitutional claim that [she] now urges upon the
federal courts."  *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (internal quotation marks
omitted); *accord O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must
give the state courts an opportunity to act on his claims before he presents those claims to a federal
court in a habeas petition.").  A petitioner is considered to have "fairly presented his constitutional
claim to the state court" by "cit[ing] specific provisions of the [United States] Constitution in his
state court brief."  *Davis*, 270 F.3d at 122; *see also Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir.
1992) (explaining that even "a minimal reference to the Fourteenth Amendment" presents a federal
constitutional claim to the state courts).

### 2.    Independent and Adequate State Grounds

Moreover, federal courts generally will decline to review a federal claim, even if it has
been deemed exhausted, where the "decision of the state court rests on a state law ground that is
independent of the federal question and adequate to support the judgment."  *Garvey v. Duncan*,
485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)); *see also
Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999) ("Nonetheless, invoking principles of comity and
federalism, rather than jurisdiction, federal habeas courts faced with an independent and adequate
state ground of decision defer in the same manner as does the Supreme Court on direct review.").
"This rule applies whether the state law ground is substantive or procedural."  *Coleman v.
Thompson*, 501 U.S. 722, 729 (1991); *accord Aparicio v. Artuz*, 269 F.3d 78, 92 (2d Cir. 2001)
("Although this claim is admittedly exhausted, it is nonetheless procedurally barred because the
state court rejected it on an adequate and independent state procedural ground.").  Accordingly,

where the state court "explicitly invokes a state procedural bar rule as a separate basis for decision," federal review of the claim is barred "absent a showing of cause for the default and resulting prejudice" or "a demonstration that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (internal quotation marks and citations omitted). This holds true "even where the state court has also ruled in the alternative on the merits of the federal claim." *Id.*; *accord Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").

### 3.    AEDPA Deference

Where a state court has disposed of a claim on the merits, the "highly deferential standard" under AEDPA, which "demands that state-court decisions be given the benefit of the doubt," applies. *Jones v. Murphy*, 694 F.3d 225, 234 (2d Cir. 2012) (quoting *Hardy v. Cross*, 565 U.S. 65, 66 (2011) (per curiam)). When a state prisoner raises "any claim that was adjudicated on the merits in State court proceedings" as a basis for federal habeas relief, such relief may be granted only if the state court decision

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As to the first prong, to be "contrary to," or an "unreasonable application of," Supreme Court precedent, the state court decision must (1) "arrive[] at a conclusion opposite to that reached

by [the Supreme Court] on a question of law"; (2) "decide[] a case differently than [the Supreme Court] on a set of materially indistinguishable facts"; or (3) "identif[y] the correct governing legal principle . . . but unreasonably appl[y] that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  As to the second prong, the reasonableness of the state court's factual findings must be assessed "in light of the record before the court," *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003), and the state court's determinations must be afforded such "substantial deference" that if "reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination," *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (cleaned up).  Indeed, the state court's factual determination "may not [be] characterize[d] . . . as unreasonable 'merely because [a reviewing court] would have reached a different conclusion in the first instance.'"  *Id.* at 313-14 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

### III. Discussion

As a preliminary matter, the Court confirms that the instant matter continues to present a case or controversy under Article III, Section 2, of the United States Constitution, notwithstanding McTiernan's recent release from incarceration.  While a person seeking relief under Section 2254 must have been "in custody" when the petition was filed, *Spencer v. Kemna*, 523 U.S. 1, 7 (1998), "a habeas petition challenging a criminal conviction is not necessarily mooted when the petitioner is released from prison, as collateral consequences of that conviction may still impinge on the petitioner post-release," *Perez v. Greiner*, 296 F.3d 123, 125 (2d Cir. 2002).  And collateral consequences are presumed in the case of a petitioner challenging his or her underlying criminal conviction because of the "obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences."  *Sibron v. New York*, 392 U.S. 40, 55 (1968).  Indeed,

"[t]he mere possibility that this will be the case is enough to preserve a criminal case from ending ignominiously in the limbo of mootness." *Id.* (internal quotation marks omitted); *see also Perez*, 296 F.3d at 125 ("After *Sibron*, a habeas petition challenging a criminal conviction is rendered moot by a release from imprisonment only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." (internal quotation marks omitted)).

As McTiernan is challenging the 2016 criminal conviction for manslaughter in the first degree, a conviction for which McTiernan remains subject to conditions of parole, the petition has not been mooted by McTiernan's release from custody. Agreeing at the threshold with the Report and Recommendation's determination that each of McTiernan's claims had been fairly presented to the Appellate Division and were thus exhausted under Section 2254(b)(1)(A), R&R at 23, 39, 45, the Court proceeds to consider McTiernan's objections to the Report and Recommendation.

As earlier discussed, McTiernan's jury instruction challenges (and the closely related claim for ineffective assistance of counsel) revolve around the defense that, when McTiernan stabbed Upshur in the chest, McTiernan was justified in using such deadly force. In the habeas context, where an error in a state trial court's jury instruction is alleged, it is not enough to find that the instruction was "undesirable, erroneous, or even universally condemned." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973) (internal quotation marks omitted). Rather, the error must have "violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Id.* The relevant question thus is "not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147; *see also Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting and reaffirming *Cupp*). And where, as here, the alleged errors concern a

justification charge, a federal court may not grant habeas relief without answering the following

questions in the petitioner's favor:

> First, was the justification charge required as a matter of . . . state law? Second, if
> so, did the failure to give the requested charge violate the standard set out in
> *Cupp*[?]   Third, if so, was the state court's failure of such a nature that it is
> remediable by habeas corpus, given the limitations prescribed by 28 U.S.C. § 2254?

*Strack*, 270 F.2d at 124.  Guided by these principles, the Court considers each of the three alleged

errors related to the trial court's instruction on justification.

## A.        Instruction on the Immediacy of Force Used in a Robbery

At trial, McTiernan advanced a defense predicated on the justified use of deadly force to

thwart a robbery.  *See* N.Y. Penal Law § 35.15(2)(b); *see also infra* III.C.  McTiernan's first

challenge thus concerns the trial court's definition of "robbery," which definition McTiernan

argues prevented the jury from concluding that McTiernan was a victim of robbery in the first

instance.  Petition at 13-17.

In charging the jury on the definition of robbery, the trial court instructed:

> A person forcibly steals property and commits robbery, when in the course of
> committing a larceny, such person uses or threatens the *immediate* use of physical
> force upon another person for the purpose of . . . [1] compelling the owner of such
> property to deliver up the property; or [2] preventing or overcoming resistance to
> the taking of the property; or [3] preventing or overcoming resistance to the
> retention of the property *immediately* after the taking.

Tr. at 1434:19-1435:4 (emphases added).  While McTiernan concedes that this instruction mirrors

the statutory definition of robbery in New York Penal Law Section 160.00,[5] and reflects the

---

[5] Section 160.00 provides:

Robbery is forcible stealing.  A person forcibly steals property and commits robbery
when, in the course of committing a larceny, he uses or threatens the immediate use
of physical force upon another person for the purpose of:

standard Criminal Jury Instructions for New York, McTiernan nevertheless insists that the instruction contravenes New York law insofar as the instruction precludes the finding that a robbery has occurred where there is a "delay between the taking and the use of force."  Petition at 13-14.

Judge Cott found that federal review of this claim was barred because the Appellate Division's decision rested on its interpretation of state law.  R&R at 25-28.  Indeed, the Appellate Division explained that the trial court's instruction correctly defined robbery under New York law, and further clarified that the trial court was not required to grant McTiernan's request for an instruction that the specific circumstances of the case met the definition of robbery as a matter of law, as "whether or not the victim used force immediately after taking [McTiernan]'s phone was a question of fact for the jury."  *McTiernan II*, 111 N.Y.S.3d at 23; *see also People v. Dekle*, 438 N.E.2d 101, 102 (N.Y. 1982) (describing with implicit approval the trial court's charge that the word "immediately" in the robbery statute "means straight away, promptly, has its ordinary meaning—no more and no less" and that "[n]o specific time is required" for the term).  Judge Cott recommended, in the alternative, that this claim should be denied on its merits, finding "nothing in the record to indicate that refusing to elaborate upon the meaning of 'immediately' somehow 'so infected the entire trial' that McTiernan's conviction was obtained in violation of due process." R&R at 29 (quoting *Middleton v. McNeil*, 541 U.S. 433, 437 (2004)).

---

1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or

2. Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

N.Y. Penal Law § 160.00.

McTiernan raises no clear objection to the Report and Recommendation's conclusion that this challenge is procedurally barred from federal review, and instead doubles down on the merits of this claim, largely reiterating the arguments raised in the petition. *See* Objections at 7-10. Finding no error, clear or otherwise, in the Report and Recommendation's determination that this challenge is both procedurally barred and meritless, the Court overrules McTiernan's objections as to this claim.

**B.      Instruction on the Justified Use of Deadly Physical Force in Effecting an Arrest**

The Court turns next to McTiernan's claim that, based on the evidence adduced at trial, McTiernan was entitled to an instruction on justification for the use of deadly physical force in effecting an arrest. *See* Petition at 17-19.

New York Penal Law Section 35.30(4) provides in pertinent part:

> A private person acting on his or her own account may use physical force, other than deadly physical force, upon another person when and to the extent that he or she reasonably believes such to be necessary to effect an arrest or to prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense and who in fact has committed such offense; and may use deadly physical force for such purpose when he or she reasonably believes such to be necessary to . . .
>
> (b) Effect the arrest of a person who has committed murder, manslaughter in the first degree, *robbery*, forcible rape or forcible criminal sexual act and who is in immediate flight therefrom.

N.Y. Penal Law § 35.30(4) (emphasis added).  The Appellate Division determined that this challenge was unpreserved, "decline[d] to review it in the interest of justice," and, in the alternative, rejected it on the merits, given the absence of "evidence that [McTiernan] stabbed the victim in order to make or facilitate an arrest for robbery." *McTiernan II*, 111 N.Y.S.3d at 23.

**1.      Procedural Bar**

Finding that this claim was denied on an independent and adequate state procedural ground (*i.e.*, New York's contemporaneous objection rule), Judge Cott determined that federal review was

precluded.  R&R at 30-35.  New York's contemporaneous objection rule, codified at Section 470.05 of New York's Criminal Procedure Law, provides as follows:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.  Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in re[s]ponse to a protest by a party, the court expressly decided the question raised on appeal.  In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

N.Y. Crim. Proc. Law § 470.05(2).  "In effect, an objection is preserved if the objecting party (1) made his or her position regarding the ruling known to the trial court; (2) made a protest, and the trial court 'expressly decided the question raised on appeal'; or (3) 'without success . . . either expressly or impliedly sought or requested a particular ruling.'"  *Downs v. Lape*, 657 F.3d 97, 102-03 (2d Cir. 2011) (quoting N.Y. Crim. Proc. Law § 470.05(2)).

The contemporaneous objection rule offers a "flexible approach," enabling "New York state courts of appeal to determine whether the rule's curative purpose is satisfied" in asking whether counsel's statement qualifies as an objection.  *Id*. at 103.  It requires, "at the very least, that any matter which a party wishes" to preserve for appellate review be "brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error."  *People v. Luperon*, 647 N.E.2d 1243, 1246-47 (N.Y. 1995).  A "general objection is not sufficient," because, as "New York's highest courts uniformly instruct," to preserve a claim, a defendant must "specifically focus on the alleged error."  *Garvey*, 485 F.3d at 714 (collecting state court authority).

In objecting to Judge Cott's determination that this claim was procedurally defaulted, McTiernan insists that trial counsel adequately preserved the issue at the charging conference, Objections at 13, referring to the following exchange:

> Mr. Garber:    There is also the concept of justification to  effect an arrest and escape from custody.  So –
>
> The Court:     That does not apply to this case in any way and I am not charging that.  That application is denied.
>
> Mr. Garber:    Okay.  So I think I have your e-mail address . . . .

Tr. at 1282:16-23.  McTiernan urges that the relevant jury instruction was "more than 'impliedly sought'" in the cited exchange and challenges the Report and Recommendation's reliance on *People v. Griffin*, 808 N.Y.S.2d 163, 163-64 (1st Dep't 2005), in which the Appellate Division dismissed a jury charge claim because the defendant failed to renew an objection, which had been made at the charging conference, after the charge was read.  *See* Objections at 14-15 (arguing that *Griffin* cannot be "reconciled with clear higher authority—New York's preservation statute itself and New York State Court of Appeals precedent"); *see also* R&R at 32.  Finally, McTiernan charges the Report and Recommendation with exhibiting "blind faith in a state court ruling that runs against its own rules and precedent and that is plainly wrong."  Objections at 15.

Reviewing this portion of the Report and Recommendation *de novo*, the Court overrules McTiernan's objections.   The federal court's "function on habeas review of a state court proceeding is not to reenact the proceeding or peer over the shoulder of the state court judge ruling on questions of state law."  *Downs*, 657 F.3d at 101.  Rather, "[t]he only question for [the court] to resolve . . . is whether that independent state law ground is 'adequate,' on the[] facts, to preclude further review of the federal claim."  *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011).  Generally, "a state ground for decision will be deemed adequate to preclude habeas review of a

federal claim if it stems from violation of a 'rule that is firmly established and regularly followed by the state in question.'" *Id.* (quoting *Garcia*, 188 F.3d at 77).

New York's contemporaneous objection rule meets that criterion, and McTiernan does not contend otherwise. *See Downs*, 657 F.3d at 104 (explaining that the Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule" and citing cases for that proposition). Rather, McTiernan ostensibly "seeks to rely on the narrow exception . . . for those 'exceptional cases' in which application of an otherwise sound state rule is so 'exorbitant' as to render it 'inadequate to stop consideration of a federal question.'" *Whitley*, 642 F.3d at 287 (quoting *Lee*, 524 U.S. at 376). That exception does not apply. In fact, the Appellate Division's determination was well within the scope of its routine application of the contemporaneous objection rule.

For example, in *People v. Karabinas* (which the Appellate Division cited, *McTiernan II*, 111 N.Y.S.3d at 23), the Court of Appeals affirmed the determination by the Appellate Division's Second Department that the defendant's request to charge the jury with respect to an alibi defense had not been preserved. *Karabinas*, 472 N.E.2d 321, 322 (N.Y. 1984). In denying the requested charge, the trial court "noted that the statements of the defendant's girlfriend did not provide an alibi because they related to events occurring after the time of the victim's death." *Id.* The defendant had neither disputed that conclusion nor pointed to other evidence in the record that could support an alibi defense, but argued for the first time before the Appellate Division that a statement he made to the police could adequately support an alibi defense. *Id.* Finding that this issue had not "been brought to the court's attention when the alleged error could have been corrected," the New York Court of Appeals held that it had not been preserved for appellate review. *Id.*

Similarly, the trial court here denied McTiernan's request for a charge on justification of the use of deadly physical force to effect an arrest on the grounds that such charge did not accord with the evidence presented at trial.  *See* Tr. at 1282:19-20 (the trial court responding that the requested jury charge "does not apply to this case in any way").  And here, too, McTiernan's counsel did not challenge that determination.  *Id.* at 1282:20.  As a result, the trial court had no occasion to consider McTiernan's new argument that certain trial evidence—namely, McTiernan's testimony about trying "to get someone to call 911," *id.* at 1131:6-8—adequately supported the theory that McTiernan stabbed Upshur in the chest while attempting to effect an arrest, *see* Objections at 12; Petition at 17-18.  The application of the contemporaneous objection rule in this context plainly furthers the rule's principal objectives "to ensure that parties draw the trial court's attention to any potential error while there is still an opportunity to address it and to prevent those who fail to do so from sandbagging the opposing party and the trial court on appeal." *Whitley*, 642 F.3d at 288 (internal quotation marks and citations omitted).

Because the Appellate Division's determination was far from "exorbitant," federal review of McTiernan's claim is precluded, and McTiernan's objections to the Report and Recommendation's disposition on this score are overruled.

### 2.    Merits

Judge Cott ruled in the alternative that the trial evidence did not, in any event, support McTiernan's defense of justification based on an attempt to effect an arrest.  R&R at 35-36.

Once again, under New York law, a "private person acting on his or her own account . . . may use deadly physical force . . . when he or she reasonably believes such to be necessary to . . . [e]ffect the arrest of a person who has committed . . . robbery . . . and who is in immediate flight therefrom."  N.Y. Penal Law § 35.30(4).  And as earlier mentioned, in insisting that an instruction to that effect was warranted, McTiernan points to excerpts of trial testimony which,

according to McTiernan, evidence McTiernan's intent to alert the police or a bystander that the robbery was taking place.  *See* Petition at 17-19; *see also* Tr. at 1129:10-13, 1131:6-8.  Judge Cott determined that "apart from [those] statements, there is nothing to suggest that [McTiernan] took any action to effect an arrest of either Upshur or Flynn."  R&R at 36.  In objecting to this determination, McTiernan contends that the Report and Recommendation failed to view the record in the light most favorable to McTiernan.  Objections at 11; *see Davis*, 270 F.3d at 124-25 ("Under New York law, in determining whether the evidence warrants a justification charge, the court must assess the record in the light most favorable to the defendant.").

Although it need not reach this issue given the procedural bar, the Court has reviewed the relevant portion of the Report and Recommendation *de novo* and reaches the same conclusion that the record, considered in the light most favorable to McTiernan, did not support a justification defense based on an attempt to effect an arrest.  The proffered excerpts of McTiernan's testimony at most shed light on McTiernan's motive in demanding loudly enough for others to hear that Flynn and Upshur return the phone—*i.e.*, that as a result, someone else would call the police.  *See* Tr. at 1129:10-12 (McTiernan testifying: "I said give me my phone, give me my phone.  I was hoping it would draw attention and someone would call the police and get the phone back that way."), 1131:6-8 (McTiernan testifying: "No, I'm yelling.  It's not at the top of my voice.  I'm trying to balance not spooking them and drawing enough attention to get someone to call 911.").  This testimony does not evince McTiernan's motivation in *stabbing Upshur*—the conduct for which McTiernan has sought to rely on the justification defense.  In fact, the only explanation McTiernan offered for stabbing Upshur was to defend against Upshur's imminent attack.  *See, e.g.*, *id.* at 1133:6-8 (McTiernan testifying: "Besides you heard how badly it turns out from two or more.  At the very least I was going to end up on the ground getting my head kicked in.  So I

terminated that."), 1133:16-18 (McTiernan testifying: "As I told you, I was either going to get stabbed myself or I was going to get my head kicked in until I'm unconscious. Who knows how far it would go.").

For that reason, *People v. Karp*, on which McTiernan attempts to rely, Objections at 11-12, is readily distinguishable. *Karp*, 551 N.Y.S.2d 503 (1st Dep't 1990), *rev'd on procedural grounds*, 566 N.E.2d 1156 (N.Y. 1990). There, the defendant fired shots after a perpetrator pushed him, stole $1,400 from his pocket, and fled. *Id.* at 504. The defendant had testified that he fired those shots "with the hope that somebody would stop the person or better yet that the person would stop himself and [he] [c]ould recover [his] money," and further that he "thought by firing up in the air, the man would halt or somebody else would stop the fleeing person." *Id.* at 505. Here, on the other hand, McTiernan offered no testimony that McTiernan stabbed Upshur in the chest to stop him from fleeing the scene in the hopes that he might subsequently be apprehended by police. And the trial court's refusal to offer this plainly inapposite instruction did not so "infect[] the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 147.

Accordingly, the Court overrules McTiernan's objections to the Report and Recommendation's conclusions on the merits of this claim.

**C.    Instruction on the Justified Use of Deadly Physical Force to Thwart Robbery**

McTiernan further argues that the trial court's error in instructing the jury on the justified use of deadly physical force to resist robbery warrants habeas relief. Petition at 19-22. Because McTiernan's claim for ineffective assistance of counsel is intertwined with this challenge, *id.* at 29-30, the Court considers them together.

Section 35.15 of the New York Penal Law provides, in relevant part:

2. A person may not use deadly physical force upon another person . . . unless

24

> (a) The actor reasonably believes that such other person is using or about to use deadly physical force . . . or

> (b) He . . . reasonably believes that such other person is committing or attempting to commit a . . . robbery[.]

N.Y. Penal Law § 35.15(2). This subsection provides two alternate grounds for justification, and as discussed earlier in the context of the appeal of McTiernan's first conviction, the critical difference between them is "that deadly physical force may be permissible to defend against a robbery *even if the alleged robber is using only physical force, and not deadly physical force*." *McTiernan I*, 990 N.Y.S.2d at 204 (emphasis added).

In charging the jury on the latter ground for justification, the trial judge delivered the appropriate instruction the first three times. First, the trial court instructed:

> As to the second application of justification, under our law a person may use deadly physical force upon another individual when, and to the extent that, he reasonably believes it to be necessary to defend himself from what he reasonably believes to be the use or the imminent use of *unlawful physical force* by such individual and when he reasonably believes that the other individual is committing or attempting to commit a robbery.

Tr. at 1431:14-21 (emphasis added). Shortly thereafter, the trial court explained that the application of this standard would require the jury to find, among other things, that McTiernan "actually believed that Fain Upshur was using or was about to use *unlawful physical force* against [McTiernan] . . . and that Fain Upshur was committing or attempting to commit a robbery." *Id.* at 1432:8-13 (emphasis added). And finally, in explaining the objective reasonableness requirement, the trial court instructed:

> Thus, under our law of justification, it is not sufficient that the defendant honestly believed in his own mind that he was faced with defending himself against the use or imminent use of *unlawful physical force* from an individual committing or attempting to commit a robbery. An honest belief, no matter how genuine or sincere may yet be unreasonable.

*Id.* at 1432:17-23 (emphasis added).

But in the final iteration of this ground for justification, the trial judge misspoke and instructed that McTiernan must have been faced with the use or imminent use of deadly physical force by Upshur:

> To have been justified in the use of deadly physical force [McTiernan] must have honestly believed that it was necessary to defend [McTiernan] from what [McTiernan] honestly believed to be the *use or imminent use of deadly physical force by Fain Upshur*, that Fain Upshur was committing or attempting to commit a robbery and that a reasonable person in [McTiernan]'s position knowing what [McTiernan] knew and being in the same circumstances would have believed that too.

*Id.* at 1432:24-1433:7 (emphasis added). McTiernan's counsel failed to object to this erroneous instruction when it was delivered. While McTiernan raised this issue to the Appellate Division both in the form of a jury instruction challenge and a claim for ineffective assistance of counsel, *see* Dkt. 9-1 at 38-48, the Appellate Division addressed only the former and determined that the challenge was unpreserved, and alternatively, meritless, *see McTiernan II*, 111 N.Y.S.3d at 23.

Because the Appellate Division found that McTiernan's challenge to the trial court's misstatement in the jury charge was unpreserved, Judge Cott concluded that the same challenge in McTiernan's Section 2254 Petition was barred from federal review under the independent and adequate state grounds doctrine. R&R at 38-40. McTiernan does not object to this determination, with which this Court agrees. Rather, McTiernan urges that the merits of this claim should nevertheless be considered because, according to McTiernan, the procedural default was the direct result of ineffective assistance of counsel. Objections at 16 ("The focus should therefore be on the alleged default, and whether trial counsel was ineffective for failing to object.").

The Court thus turns to McTiernan's claim for ineffective assistance of counsel. Under *Strickland v. Washington*, "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components." 466 U.S.

668, 687 (1984).  First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  Second, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692.  "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Id.* at 693.  To discharge that burden, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," where "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  When reviewing a state court decision under Section 2254, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks omitted).  "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*

Although the Appellate Division did not expressly mention McTiernan's claim for ineffective assistance of counsel, it concluded that the trial court's "isolated misstatement in a charge that, viewed in its entirety, was correct, could not have affected the jury's verdict," *McTiernan II*, 111 N.Y.S.3d at 23—a determination that necessarily disposes of McTiernan's ineffectiveness claim under the prejudice requirement of *Strickland*.

As discussed, the trial court misspoke only once in charging the jury on this justification defense, and it did so after providing the correct instruction *three* times.  Moreover, the jury was provided with a copy of the written charge, which set forth the correct standard of "unlawful

27

*physical force*" all four times.  Petition at 22, n.18; *see* Dkt. 9-8 (copy of written charge) at 17-18.

It is true, as McTiernan emphasizes, that the trial judge instructed the jury to prioritize his oral

instructions over the written instructions.  Petition at 22, n.19; *see* Tr. at 1408:21-1409:4.  But the

trial court also advised the jury to seek further clarification by submitting a note if they perceived

any disparity between the written copy of instructions they were provided and their recollection of

the court's oral instructions.  *See* Tr. at 1409:5-8.  Significantly, the jurors sent no such note.  *See*

*generally id.* at 1454:23-1460:6 (jury deliberations).

   In these circumstances, the Court agrees with Judge Cott's conclusion that McTiernan has

failed to satisfy the prejudice prong under *Strickland*.  *See* R&R at 46.  The trial judge's singular

error, evaluated in the context of the judge's repeated correct statements of the law both in his oral

instructions and in his written charge, was highly unlikely to have affected the jury's verdict,

regardless of whether any strategic decision existed for trial counsel's failure to object.  The Court

thus overrules McTiernan's objections on this score.[6]  And for the same reason, the Court agrees

with Judge Cott's determination that the trial court's misstatement did not "so infect the entire trial

that the resulting conviction violate[d] due process."  R&R at 42-43 (quoting *Cupp*, 414 U.S. at

147).  Accordingly, even had there been any basis to excuse the procedural bar to federal review

---

   [6] McTiernan's objections to Judge Cott's ineffective assistance recommendation are
somewhat difficult to follow.  McTiernan insists that "there was obviously 'prejudice' in this case"
because "[s]elf-defense was the battle line."  Objections at 16-17.  But this conclusory assertion
does not at all address whether the trial court's one misstatement affected the jury's verdict.
McTiernan then goes on to argue that because "prejudice is not a critical component" under New
York law's assessment of whether counsel provided "meaningful representation," "[t]his can cause
New York courts to . . .  fail[] to realize that under federal law prejudice can be based on a single
error if significant enough."  *Id.* at 17.  This grossly speculative commentary on New York courts'
potential inability to apply *Strickland* properly does not bear on the question of whether McTiernan
has satisfied *Strickland*'s prejudice prong.  As discussed above, McTiernan has not.

of McTiernan's challenge to this one misstatement in the jury charge, that challenge would still fail on its merits.

**D.      Cumulative Errors**

Lastly, McTiernan reiterates that "since all the errors individually warrant relief, they certainly justif[y] relief when viewed in conjunction." Objections at 17. The Court discerns no error, clear or otherwise, in the Report and Recommendation's determination that "[b]ecause there is no meritorious claim upon which habeas relief should be granted, there can be no accumulation of errors." R&R at 48.

## IV.  Conclusion

For the foregoing reasons, the Court adopts the Report and Recommendation in its entirety and denies McTiernan's petition for a writ of habeas corpus. As McTiernan has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *see Hoffler v. Bezio*, 726 F.3d 144, 154 (2d Cir. 2013). The Clerk of Court is respectfully directed to close this case and enter judgment in favor of Respondent.

SO ORDERED.

Dated: August 12, 2024
        New York, New York                    _____
                                                          JOHN P. CRONAN
                                                    United States District Judge